IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NANCY HART,

Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, CATHOLIC HEALTHCARE WEST LONG TERM DISABILITY PLAN, and CATHOLIC HEALTHCARE WEST PENSION PLAN,

Defendants.

No. C 15-05392 WHA

**ORDER RE MOTION FOR ATTORNEY'S FEES, COSTS, FORM OF JUDGMENT, AND PREJUDGMENT INTEREST**

## INTRODUCTION

Plaintiff in this ERISA action moves for attorney's fees, costs, prejudgment interest, and to bar an offset on her benefits payments following judgment in her favor. The motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Judge Thelton Henderson presided over and decided this ERISA action on the merits before his retirement this year. His comprehensive order dated May 24, granting plaintiff Nancy Hart's motion for judgment and denying defendant Unum Life Insurance Company of America's motion for judgment (Dkt. No. 65), is incorporated by reference. That order's detailed explanation of the factual and procedural background need not be repeated herein.[*]

---

[*] Hart stipulated to dismiss the other named defendants earlier in this litigation, so Judge Henderson's final decision on the merits concerned only Hart's claims against Unum (*see* Dkt. Nos. 26, 40).

After Judge Henderson's retirement, this action was reassigned to the undersigned judge. The only issues remaining on the instant motion are Hart's requests for attorney's fees, costs, prejudgment interest, and full payment of her owing long-term disability benefits without offset for her social security retirement payments (Dkt. No. 80). Unum opposes Hart's motion on all fronts (Dkt. No. 87). This order follows full briefing and oral argument.

**ANALYSIS**

**1. OFFSET ON BENEFITS PAYMENTS.**

Judge Henderson's May 24 order granted judgment in Hart's favor but did not address the form of judgment. Hart admits that, under the terms of the long-term disability policy in question, Unum is entitled to offset benefits payments with the amount of her social security retirement payments (Dkt. No. 80 at 17). She nevertheless contends "it would be inequitable and unconscionable to permit Unum to reduce its liability" here because Unum's wrongful termination of Hart's claim forced her to apply for early social security retirement payments, which reduced and will continue to reduce those payments by twenty-five percent for the rest of her life (*ibid.*). Hart cites no controlling authority for her position but relies on three non-binding decisions for the proposition that courts "have held, under similar circumstances, that ERISA plans are not permitted to offset income from other sources when the insurer or plan administrator's unlawful conduct forced the plaintiff to seek alternative sources of income in the first place" (*id.* at 18). This order addresses each in turn.

In *Godfrey v. BellSouth Telecommunications, Inc.*, the defendant employer "arbitrarily and capriciously" denied the disabled plaintiff employee's claim for benefits under its ERISA plan and then threatened to fire her unless she returned to work. 89 F.3d 755, 757, 759 (11th Cir. 1996). The district court, exercising its equitable power under Section 1132(a)(3) of Title 29 of the United States Code, refused to offset the plaintiff's benefits award by the amount she received in wages when she returned to work as a result of the defendant's threat. The Eleventh Circuit acknowledged that those wages "would normally prevent [the plaintiff] from receiving benefits" but concluded that the district court did not abuse its discretion, observing that "companies that self-administer their ERISA plans . . . would have an incentive to do the same

2

thing in the future: if the employer could threaten or cajole a disabled employee into returning to work, it could obtain the rewards of having an employee in that position without hiring a replacement and without paying anything in benefits." *Id.* at 760–61.

In *McCormick v. Metropolitan Life Insurance Company*, the plaintiff ERISA plan participant successfully challenged the defendant claims administrator's decision to offset his benefits payments. The claims administrator had calculated the offset based on what it believed the plan participant would have received had he applied for social security disability benefits in a timely manner, but failed to meet its own obligations under the plan to assist him in timely applying for such benefits. 514 F. Supp. 2d 158, 160, 163–64 (D. Mass. 2007) (Judge Michael Ponsor). But that is not our case. *McCormick* did not consider whether, as Hart urges here, a claims administrator should be barred from offsetting a judgment awarding wrongly-terminated benefits pursuant to an undisputed ERISA plan term merely because the claims administrator would thereby profit from its wrongful termination of benefits in the first instance.

In *McCauley v. First Unum Life Insurance Company*, the defendant ERISA plan administrator arbitrarily and capriciously denied the plaintiff participant's long-term disability benefits claim, which denial left the participant with no source of income and forced him to return to work despite the daily "agony" of doing so. No. 97 Civ. 7662, 2009 WL 2526278, at *1–2 (S.D.N.Y. Aug. 18, 2009) (Judge Lawrence McKenna). The plan administrator then argued that, by returning to work, the participant lost his entitlement to benefits under the plan's "recurrent disability provision." Judge McKenna disagreed and refused to give effect to that provision, finding it "unconscionable" under a contract framework to "allow First UNUM to wrongfully deny benefits to an insured, and then penalize him for attempting to earn some income, even as he is disabled and at potential peril to his health." *Id.* at *2–3.

*McCauley* and *Godfrey* involved facts similar to ours. Hart, however, cites no authority and offers no analysis to show that the law in our circuit would permit application of unconscionability principles, like those relied upon in *McCauley*, to deny effect to an ERISA plan provision. Nor does Hart address the practical problem that her motion seeks to both bar an offset of benefits *and* recover prejudgment interest based on the same rationale — *i.e.*, that

1  Unum's wrongful termination of her claim caused her significant financial harm, including by
2  forcing her to draw on early social security retirement benefits (Dkt. No. 80 at 17, 19). But
3  even approaching this situation from an equitable perspective, as in *Godfrey*, would not justify
4  awarding double relief to compensate for the same underlying harm.

5  As a practical matter, had Unum not wrongly terminated Hart's benefits in the first
6  place, she would ostensibly have collected benefits from Unum — but not from social security
7  — until the age of 65 and then switched to collecting the full amount of her social security
8  retirement benefits (*see* Dkt. No. 69 ¶ 5). Allowing Unum the offset it seeks would still
9  compensate Hart for Unum's wrongful termination of benefits through the age of 65 but not for
10 the reduction of her social security retirement benefits thereafter. The latter inequity, however,
11 can be remedied through an award of prejudgment interest. This order therefore **DENIES** Hart's
12 request to bar Unum from offsetting her benefits payments pursuant to the judgment herein but
13 awards Hart additional prejudgment interest as explained below.

### 2. PREJUDGMENT INTEREST.

15 "A district court may award prejudgment interest on an award of ERISA benefits at its
16 discretion." *Blankenship v. Liberty Life Assurance Co. of Boston*, 486 F.3d 620, 627–28 (9th
17 Cir. 2007) (citations omitted). "Prejudgment interest is an element of compensation, not a
18 penalty." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001). "Whether
19 interest will be awarded is a question of fairness . . . to be answered by balancing the equities."
20 *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465
21 (9th Cir. 1985) (citations omitted). Generally, the interest rate prescribed for postjudgment
22 interest under Section 1961 of Title 28 of the United States Code is appropriate for fixing the
23 rate of prejudgment interest unless the district court finds, on substantial evidence, that the
24 equities of a particular case require a different rate. *Blankenship*, 486 F.3d at 628.

25 The balance of equities here weighs in Hart's favor. She submitted a declaration
26 explaining that Unum's wrongful termination of her benefits caused her to lose her house and
27 her car (she now lives in a trailer), lose her health insurance, and rely on her daughter for
28 financial support (*see* Dkt. No. 69). This is, of course, in addition to the aforementioned

4

reduction of her social security retirement benefits, a harm that will persist for the rest of her life. Unum does not challenge these facts directly but criticizes Hart's claim as "unpersuasive" because she (1) "cites no caselaw to support her theories," (2) "fails to submit substantial evidence to show that her proposed rate is warranted," and (3) "waited almost three years to file her lawsuit after Unum Life closed her claim" (Dkt. No. 87 at 15). But Hart needs no "caselaw" to support a personal attestation as to the *facts* of how Unum's wrongful termination of benefits caused her financial ruin. Her attestation sets forth a believable narrative and constitutes "substantial evidence" warranting a higher rate of prejudgment interest. And Unum does not even attempt to explain why Hart's delay in bringing this suit should, as an equitable matter, strip her of any ability to recover for the harms wrought by Unum's actions.

At the hearing on this motion, Unum's counsel further argued that Hart did not corroborate the statements in her declaration with further documentation. This argument remains unpersuasive. All the hardships described in Hart's declaration are consequences that flow logically and commonsensically from the loss of her primary source of income. Nothing in the declaration itself gives cause to question Hart's credibility, and Unum does not contend otherwise. Under these circumstances, and even allowing for some possibility of exaggeration, Hart's declaration constitutes substantial evidence in support of her motion.

Unum also "rejects [the] notion" that it acted with bad faith or ill will because Judge Henderson's May 24 order "did not find, or even discuss, any bad faith" (Dkt. No. 87 at 16). The rebuttal inheres in Unum's argument. Judge Henderson had no reason to make explicit findings as to bad faith, ill will, culpability, and the like because his order decided only the question of whether Hart was entitled to benefits. His initial silence did not constitute absolution. To the contrary, Judge Henderson found that, after paying Hart benefits since 2004, Unum tried to buy out her policy in 2011. Hart rejected that offer. Unum then terminated her benefits in 2012, relying in part on the contents of an alleged phone call between its medical consultant and Hart's treating physician that may or may not have ever happened and that Judge Henderson specifically found to be not credible in light of the entire evidentiary record (Dkt. No. 65 at 5–6, 12, 14–15, 18–19, 27–28). Had Judge Henderson reached the issue, these

5

findings likely could have supported a further finding that Unum acted with bad faith, ill will, or culpability in terminating Hart's benefits.

In short, the balance of equities herein warrants an award of prejudgment interest. The next question, then, is the appropriate rate of interest. Hart requests a rate of 12.4 percent "based on Unum's average annual return on equity, as reported by Unum in it's [*sic*] annual report to shareholders, between 2012 and 2015," because "Unum should not be permitted to financially benefit from its illegal conduct, and requiring prejudgment interest consistent with Unum's investment returns will fulfill that end" (Dkt. No. 80 at 18–19; *see also* Dkt. No. 91 at 13–15). Unum contends this request is barred by *Dishman* because it uses prejudgment interest as an element of penalty (Dkt. No. 87 at 15). Hart replies that *Dishman* did not preclude the general approach of selecting a prejudgment interest rate based on a defendant's earnings, only the district court's decision therein to set the rate at *twice* the actual rate of return of the defendant's investment portfolio as a penalty for acting in bad faith (Dkt. No. 91 at 14).

This order need not decide the issue. Nor does it reach Unum's further objection that Hart's calculation of its earnings lacks foundation (*see* Dkt. No. 87 at 16). Under these circumstances, Hart has adequately shown a need for further compensation even without reference to any suggestion that Unum should be penalized. *Dishman* expressly stated that, simply to compensate the plaintiff for losses incurred as a result of the defendant's nonpayment of benefits, the district court could select a rate that met or even exceeded its initial punitive selection. 269 F.3d at 988. Here, as stated, Hart has submitted substantial evidence of the harms she has suffered, and will continue to suffer, as a result of Unum's nonpayment. Those harms remain difficult, if not impossible, to quantify — but Hart has indicated by this motion that a rate around 12.4 percent would do (*see* Dkt. No. 80 at 19). This order finds that the equities of this case justify a rate of ten percent as an element of compensation to Hart, without regard to any financial gain Unum may have realized as a result of its wrongful termination of Hart's benefits. For that reason alone, Hart's request for prejudgment interest is **GRANTED IN PART** at the rate of ten percent, compounded annually (*see* Dk. No. 91 at 15).

### 3. ATTORNEY'S FEES.

Section 1132(g)(1) of Title 29 of the United States Code provides, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The Supreme Court has held that "a fee claimant need not be a 'prevailing party'" but "must show 'some degree of success on the merits' before a court may award attorney's fees under [Section] 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252, 255 (2010). Our court of appeals has further explained that, "absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 590 (9th Cir. 1984).

In our circuit, a court exercising its discretion under Section 1132(g)(1) should consider, among other things, "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).

Here, Hart undoubtedly achieved "some degree of success on the merits" by prevailing on her motion for judgment. Unum does not contend otherwise. This order therefore turns to the *Hummell* factors.

#### A. Culpability or Bad Faith.

As discussed above, Unum's argument that it "did not act in bad faith" merely because Judge Henderson's May 24 order did not specifically address the issue is unpersuasive (Dkt. No. 87 at 4). Judge Henderson made specific findings that support a further finding of culpability, and perhaps even bad faith, in Unum's wrongful termination of Hart's benefits. This factor therefore weighs in favor of granting attorney's fees.

#### B. Ability to Pay.

Unum "does not dispute that it is capable of satisfying an award of fees" (*ibid.*). This factor also weighs in favor of granting attorney's fees.

7

### C. Deterrence.

Hart asserts in conclusory fashion that a fees award here "will deter Unum and other disability insurers from unreasonably terminating claims that have been in pay status for an extended period of time and will encourage plan administrators to make reasonable inquiries into the accuracy of their employee's verbal interactions with treating physicians" (Dkt. No. 80 at 11). This assertion fails to persuasively show why that generic deterrence effect here would be appreciably greater than in any ERISA action that results in an adverse judgment against insurers. This factor is neutral.

### D. Benefitting Others.

Hart does not and cannot dispute that she brought this lawsuit only on her own behalf and for her own benefit. She nevertheless contends the outcome herein will benefit other ERISA plan participants because, "[w]ith the guidance provided by the Court's order, all participants in Unum insured plans will — *one hopes* — now enjoy a more robust claims review process, one that hopefully will take better account of evidence submitted in support of their claims" (*ibid.* (emphasis added)). Again, this is nothing more than a generic, unsubstantiated assertion that fails to appreciably distinguish this case from any other in which the ERISA plaintiff prevails. Hart also asserts in conclusory fashion that Judge Henderson's prior order at the summary judgment stage (Dkt. No. 50) provided "important clarification" regarding the "pressing ERISA litigation issue" of "contractual time limitation provisions" (Dkt. No. 80 at 11) — an argument Unum does not specifically address — but provides no other analysis of that order's significance. At most, this factor weighs slightly in favor of granting attorney's fees.

### E. Relative Merits.

Notwithstanding Unum's insistence that its arguments in this litigation "were not baseless," Judge Henderson's May 24 order makes clear that the relative merits weigh in Hart's favor. This factor, and the balance of the *Hummell* factors as a whole, therefore weigh in favor of granting attorney's fees.

8

Hart also seeks $592.05 in litigation costs (Dkt. No. 80-1 ¶ 20, Exh. 6). Unum does not address this request in its opposition brief. This order concludes the amount requested is reasonable and accordingly **GRANTS** Hart $592.05 in litigation costs.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. Her request to bar the offset of her benefits payments is **DENIED**. Her request for prejudgment interest is **GRANTED IN PART** at the rate of **TEN PERCENT**, compounded annually. Her request for attorney's fees is **GRANTED**. Her request for **$592.05** in costs is **GRANTED**. Defendant's request for judicial notice (Dkt. No. 87-1) is not relied upon in this order and **DENIED AS MOOT**.

This order decides only the question of entitlement to attorney's fees. A companion order will set forth the procedure to determine the appropriate amount of the fee award.

**IT IS SO ORDERED.**

Dated: October 4, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE